# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

WILLIE ROSE,

                *Plaintiff*,

*v.*

WAYNE COUNTY, WYLENE ABDULLAH,
CATHY GARRETT, TAMMI
PALMER, BARBARA BROWN,
MILTON MACK, JENNIFER
PHILLIPS, ROBERT FICANO,

                *Defendants*.

_____/

CASE NO. 18-13786

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT & RECOMMENDATION ON 28 U.S.C. § 1915 *SUA SPONTE* SCREENING, PLAINTIFF'S MOTIONS TO AMEND (R. 7, 22), AND PLAINTIFF'S MOTIONS FOR INJUNCTIONS (R. 2, 9, 21)

## I.     Recommendation

Plaintiff Willie Rose is a prisoner incarcerated by the Michigan Department of Corrections (MDOC). He has sued Wayne County and a host of government officers under 42 U.S.C. § 1983, alleging that they violated his constitutional right to access the courts by preventing him from obtaining transcripts of hearings and other records from his criminal case. (R. 1, PageID.1-4.) Those materials, he contends, will show constitutional violations entitling him to overturn his criminal conviction. To get them, he has brought the present lawsuit. Since filing the complaint, he has twice sought leave to amend, (R. 7, 22), and has filed three motions for injunctions and temporary restraining orders that ask the Court to order production of the transcripts. (R. 2, 9, 21.)

1

Plaintiff's obligation to prepay filing fees has been waived, subjecting his complaint to screening by the Court. 28 U.S.C. § 1915. For the reasons below, I **RECOMMEND** the following: (1) **GRANTING** both motions to amend (R. 7, 22), (2) *sua sponte* **DISMISSING** Defendant Wayne County with prejudice, (3) *sua sponte* **DISMISSING** the remaining claims without prejudice, and (4) **DENYING** the motions for injunctive relief, (R. 2, 9, 21).

## II.    Report

### A.    Factual Background[1]

In August 2012, Plaintiff "pleaded guilty to assault with intent to commit murder, felon in possession of a firearm, and felony firearm." *Rose v. Woods*, No. 5:15-CV-11963, 2017 WL 6493233, at *1 (E.D. Mich. Dec. 19, 2017). He then unsuccessfully sought leave to appeal in the state courts and federal habeas relief. *Id.* at *1-2.

Plaintiff began his long quest to obtain records from his criminal case in February 2016, when he wrote a court reporter, Defendant Carla Franceschi, for "complete records" so that he could demonstrate prejudice "throughout the State District Court proceedings." (R. 22, PageID.204.) The request was denied because he was indigent, he says. (R. 22, PageID.205.) Franceschi again failed to provide the information in November 2018, apparently having "withheld, concealed, altered, and/or destroyed records in the 11/10/11

---

[1] Defendant's most recent complaint adds three Defendants: Doreen Pickett, Therese Roberts, and Carla Franceschi. (R. 22, PageID.202.) Otherwise, it differs only minutely from the first two. Because Fed. R. Civ. P. 15(a) entitled him to file the second complaint (his first stab at amending), and I recommend below allowing him to file the third (his second amended complaint), I will relate the facts from the third complaint in this section.

through 12/15/11 Court proceedings." (*Id.*) She altered one transcript and destroyed another in which "Mr. Morgan withdrawing and asking [*sic*] for bond-reduction again." (*Id.*)[2] Later he adds that "monetary reasons" prompted the withdrawal. (R. 22, PageID.217.)

In 2016 and 2017, he sought replacement records from Defendants Barbara Brown and the "Wayne County Executive Office," but was denied. (*Id.*) Sometime in 2018, he moved for the records but was denied. (R. 22, PageID.207.) Later, however, Judge Donald Knapp reviewed Plaintiff's request and ordered Defendant Wylene Abdullah and a non-party reporter to procedure transcripts from proceedings that occurred on February 10, 2012 and April 4, 2012. (R. 22, PageID.205.) He has not attached any court order but does include an August 20, 2018 letter from Judge Knapp's research attorney explaining that the court had "ordered the production of transcripts for the February 2012 final conference hearing and the April 4, 2012 competency hearing," which had not yet been transcribed. (R. 22, PageID.225.) When they were finished, Plaintiff was to receive free copies. (*Id.*) Abdullah never handed over the files and must have destroyed them, Plaintiff speculates. (R. 22, PageID.206.) His letters to Abdullah pleading for the files were "to no avail." (R. 22, PageID.208.)

---

[2] Who Mr. Morgan is and what he withdrew from are not disclosed, but the inference is that he was Plaintiff's counsel. That conclusion is confirmed by Plaintiff's petition for a writ of certiorari. Petition for writ, pp. 1-2, Oct. 30, 2018, Case No. 18-6614, *Rose v. Horton*, *available at* https://www.supremecourt.gov/DocketPDF/18/18-6614/71390/20181108105320408_00000007.pdf (last accessed Feb. 20, 2019).

In October 2018, he filed "pleadings/Motions" at all levels of the Michigan court system, from the trial court to the supreme court, seeking other records: "Prosecutor's file, Police file, Pre-Trial services bond reduction report and Psych. report, to no avail." (R. 22, PageID.207.) The following month he asked Defendant Milton Mack, a state court administrator, for "records," but "to no avail." (*Id.*) Nor did he receive the "records" he requested from Defendant Jennifer Phillips, a regional court administrator, and two court reporters. (R. 22, PageID.208.) The responses from Mack and Phillips stated that they could not become involved. (R. 22, PageID.211.) Next, he had family and friends call various offices and individuals, including some defendants, seeking records. (R. 22, PageID.208.) They were told that the records could not be provided. (*Id.*) Plaintiff's uncle spoke with Defendant Tami Palmer, a supervisor, who said the requests were given to the defendants; she later recanted "and said that they couldn't allow him to purchase the public record transcripts," and that they had been "ordered" not to release certain records. (R. 22, PageID.210 (emphasis removed).)

He later sent letters to Defendants Cathy Garrett, Abdullah, and Wayne County, asking again for records and also court orders related to his cases and motions. (R. 22, PageID.211-212.) To Garrett, he complained about Abdullah's "continuing actions of engaging in the on-going custom that causes serious injury to citizen's constitutional rights due to the nature of the egregious actions which also puts Wayne County at risk for unnecessary liability." (R. 22, PageID.211.)

He also received proof that a court reporter, Defendant Doreen Pickett—whom he later calls "Doreen Pickett (Bell)," (R. 22, PageID.218)—intended to destroy his records

4

rather than let him have them. (R. 22, PageID.212.) This claim seems to relate to an unsworn declaration by Doreen Bell, attached to the complaint, in which she says that the disk containing the December 22, 2011 hearing transcript is irreparably broken. (R. 22, PageID.268.)

In addition, he claims that Palmer lied about the February 10, 2012 transcripts. (R. 22, PageID.213.) On November 29, 2018, Palmer "either engaged in an act of fraud or she officially verified that Defendant Wylene Abdullah willfully and intentionally engaged in an act of spoliation of the 2/10/12 Court transcripts with malicious intent in contempt of Court[']s ORDER, and in retaliation." (*Id.*)

Plaintiff explains that he is not discussing the underlying criminal proceedings "because he does not want to mistakenly be interpreted as challenging the conviction and sentence." (R. 22, PageID.206 (emphasis removed).) Thus, regarding the constitutional defects in his criminal case, he states at various points only that his rights were violated. Judge James Callahan, for example, trampled on his rights "in such a prejudicial and egregious way that it would warrant a reversal and dismissal of the case for violating Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution and Michigan Const. of 1963 Art. 1, Sec. 2, 11, 13, 15D, 16, 17, 20, 23, and MCR 6.004(A)." (R. 22, PageID.205-206.) The requested records would help him

> prove constitutional violations in Federal and State Court Post-Conviction Relief proceedings and to the public press, that his Federal and State constitutional rights were violated in a Court of law by the Defendant's former boss (coworker) in such a way that it tarnished the integrity of the Court proceedings, which caused him to be wrongfully convicted. This

malicious action was committed to further the illegal practice of vigilante justice . . . .

(R. 22, PageID.210.)

He also states that his inability to obtain the records has "created a permanent structural defect which is impeding" his ability to access the courts to collaterally attack his conviction and also has hampered his pending petition for writ of certiorari in the Supreme Court. (*Id.*)[3] Later, he mentions that he intends to demonstrate that his rights to due process and a speedy trial were violated during the criminal proceedings. (R. 22, PageID.219.) In an "affidavit of facts" attached to one of his motions for injunctive relief, Plaintiff indicates that his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) were also violated in his criminal case, but he fails to say how. (R. 20, PageID.181.)[4]

Regarding his present legal claims, brought under 42 U.S.C. § 1983, he "is '<u>only</u>' arguing that he is being denied access to the Courts illegally and the effects of denial on him." (R. 22, PageID.206.) Other legal provisions also appear in his complaint. He says that Defendants have violated the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the constitution, a host of state statute statutes, court rules, and constitutional sections, and even the United Nations Declaration of Human Rights. (R. 22,

---

[3] I failed to find any pending petitions for a writ of certiorari filed by Plaintiff in Westlaw's certiorari database. It appears that the Plaintiff did file a petition, however, which was denied on January 7, 2019. Letter from the U.S. Supreme Court, Jan. 7, 2019, Case No. 5:15-cv-11963, Doc. 32, *Rose v. Bauman* (E.D. Mich.).

[4] Though this allegation was not made in his complaint, the Court can consider it as part of the *pro se* pleading. *See Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("The court will consider documents filed after the complaint 'as part of the pleadings.'" (citation omitted)); *Strayhorn v. Caruso*, No. 11–15216, 2012 WL 4086168, at *1 (E.D. Mich. Sept. 17, 2012) (same).

PageID.214-216.) The First Amendment was violated by infringing his right to access the courts; his Fourth Amendment right to be free from "unreasonable seizure of 'papers, property', effects and persons" was violated; and his Eighth Amendment right against cruel and unusual punishment was also violated. (R. 22, PageID.214.) In addition, "[t]his is also causing the intentional infliction of mental and emotional distress." (*Id.*) He repeats these same basic contentions over the course of multiple pages, noting how the Defendants prevented him from accessing records and adding that he was discriminated against and "subjected to unequal application of the law in violation of . . . [the] Ninth and Fourteenth Amendments equal protection clauses." (R. 22, PageID.215-220.)

### B.   Analysis

#### 1.   Motions to Amend (R. 7, 22.)

Plaintiff has filed two motions to amend his complaint. (R. 7, 22.) Federal Rule of Civil Procedure 15(a)(1)(A) gives plaintiffs the right to amend their complaints "once as a matter of course within . . . 21 days after serving it." Here, Plaintiff filed his first amended complaint within 21 days of his original; thus, his first motion to amend should be granted. (R. 7.)

For his other motion, Rule 15(a)(2) applies: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The decision to grant or deny a motion to amend is within the sound discretion of the court. *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 591 (6th Cir. 1990). Factors to consider include undue delay in filing the motion, notice to the opposing party, prejudice to the opposing party, and the futility of the

proposed amendment. *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)

(quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

In this case, Plaintiff's second motion was reasonably prompt, coming before the

Court acted on any pending motions. The opposing parties are not prejudiced, as they have

not yet entered appearances. Also, the new allegations relate to the same events discussed

in Plaintiff's first two amendments. He mentions, for example, other comments his uncle

made to court staff when trying to pay for the transcripts. (R. 22, PageID.210.) Most of the

proposed additions are simply legal conclusions that he has spliced into his old complaint,

along with a beefed up "legal claims" section that reiterates these claims and applies them

to individual Defendants. (R. 22, PageID.205-206, 214-220.)

True, none of the amendments save the complaint from dismissal, and thus they are

futile. Still, I conclude that the better course is to grant the second amendment and consider

the complaint as a whole rather than trying to unravel the new allegations and identify their

flaws piecemeal. The new parts and the old fail for the same basic reasons, explained

below, so efficiency favors addressing them together. Consequently, I recommend that the

Court grant Plaintiff's second motion to amend. (R. 22.)

### 3.    Screening

Plaintiff's claims, all under 42 U.S.C. § 1983, are best considered in two groups.

The first consists only of his access-to-courts claim, which dominates the complaint so

completely that it would seem no other claims exist. Indeed, at one point he says this is his

sole contention. (R. 22, PageID.206.) Nevertheless, he appears to take a stab at stating a

second class of claims, mixing state, federal, and even international law. I will address

these two groups of claims in turn. Before addressing those two groups, however, I will address the claims against Wayne County.

### a.     Legal Standards

Plaintiff is proceeding IFP, subjecting his claim to the screening standards in 28 U.S.C. § 1915(e)(2)(B). Since 1892, federal courts have possessed statutory power to permit civil actions IFP. *See Bruce v. Samuels*, 136 S.Ct. 627, 629 (2016). That power, presently codified at 28 U.S.C. § 1915, is intended to ensure that indigent persons have equal access to the judicial system by allowing them to proceed without advancing the litigation fees and costs. *Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981).

Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To counteract these incentives, Congress crafted a screening procedure that requires the court to *sua sponte* review the complaints of all plaintiffs proceeding IFP and dismiss any before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints

must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

When considering whether a complaint states a claim, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action." *Id.*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing (1) the conduct about which he or she complains was committed by a person acting under color of state law and (2) the conduct deprived him or her of a federal constitutional or statutory right. In addition, a plaintiff must allege that he or she suffered a specific injury because of the conduct of a particular defendant and must allege an affirmative link between the injury and that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### b.      Wayne County

At the threshold, all claims against Wayne County should be dismissed with prejudice. A municipal entity cannot be held vicariously liable under § 1983 for the acts of

its agents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-692 (1978). Instead, to sue municipalities such as the County, "a plaintiff must prove that the deprivation occurred pursuant to a municipal 'policy or custom.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994)).

Plaintiff has not pleaded that Wayne County had any policy or custom related to the events at issue in this case. The closest he comes to such a statement is his contention that Abdullah had a "custom that causes serious injury to citizen's constitutional rights due to the nature of the egregious actions which also puts Wayne County at risk for unnecessary liability." (R. 22, PageID.211.) But this undefined custom is Abdullah's, not the County's, and his rogue practices do not subject the County to liability under § 1983. *Monell*, 436 U.S. at 658. Plaintiff likewise has not alleged that the County even permitted the disputed acts of denying him records, let alone endorsed them. Consequently, he has failed to state a claim against the County.

### c.    Access to Courts Claim

Plaintiff argues that Defendants have violated his constitutional right to access the courts. While the right's constitutional basis remains "unsettled," *Christopher v. Harbury*, 536 U.S. 403, 413-415 (2002), it stretches back to at least the Magna Carta, in which the English King promised not to sell, refuse, or delay justice. *Griffin v. Illinois*, 351 U.S. 12, 16-17 (1956); 1 William Blackstone, *Commentaries* *137 (observing the "right of every Englishman . . . of applying to the courts of justice for redress of injuries"). The U.S. Supreme Court has recognized and developed the right over a series of cases. *See* Stephen

11

I. Vladeck, Boumediene*'s Quiet Theory: Access to Courts and the Separation of Powers*, 84 Notre Dame L. Rev. 2107, 2115-2125 (2009) (tracing the caselaw).

Launching this line of caselaw in *Ex Parte Hull*, the Court held that states could "not abridge or impair [a] petitioner's right to apply to a federal court for a writ of habeas corpus." 312 U.S. 546, 549 (1941). The focus of the holding was not so much an individual right as the Court's power to hear and determine petitions without a state's pre-filing screening of those petitions. *Id.* (striking down a prison regulation requiring prisoners to submit habeas petitions to the prison for pre-filing approval, and noting that "[w]hether a petition for writ of habeas corpus addressed to a federal court is properly drawn and what allegations it must contain are questions for that court alone to determine").

In subsequent cases, prompted by concerns of unequal access to justice, the Court invalidated laws requiring indigents to pay for transcripts when appealing their convictions or attacking the convictions collaterally. In *Griffin v. Illinois*, the Court held that when a state provides appellate rights to a defendant, it cannot "do so in a way that discriminates against some convicted defendants on account of their poverty." 351 U.S. at 18. While the state was not required to purchase the transcripts, it had to at least "find other means of affording adequate and effective appellate review to indigent defendants." *Id.* at 20. *See also Draper v. Washington*, 372 U.S. 487, 499-500 (1963) (holding that a trial judge's conclusion that an appeal is frivolous is not a basis for preventing full appellate review by denying indigent's request for a transcript); *Eskridge v. Washington State Bd. of Prison Terms & Paroles*, 357 U.S. 214, 215-216 (1958) (applying *Griffin*). The rules likewise apply to post-conviction proceedings. *See Long v. District Court of Iowa*, 385 U.S. 192,

194 (1966) (requiring the state to provide an already available transcript of a habeas corpus hearing). Later, however, the Court upheld a federal statute requiring a judge to determine whether an action was frivolous, or a transcript necessary, before granting free transcripts in post-conviction proceedings to vacate a sentence under 28 U.S.C. § 2255. *United States v. MacCollom*, 426 U.S. 317, 328 (1976).

In light of these cases, the Supreme Court in 1977 stated that "[i]t is beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). It went on to hold that this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. But more recent cases have qualified this holding in ways germane to the present matter.

In *Lewis v. Casey*, the Court applied its standing jurisprudence to *Bounds*, holding that "inmates alleging a violation of *Bounds* must show actual injury," one of the requirements to establish standing. 518 U.S. 343, 349 (1996). Because the basic right is to access the courts, not to any particular means of access such as library resources or free transcripts, an actual injury to the right requires a showing that the inmate was "hindered [in] his efforts to pursue a legal claim." *Id.* at 351. Summing up, the Court stated that *Bounds* mandated states to provide inmates only those "tools . . . need[ed] to attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement." *Id.* at 355.

13

*Lewis* was fleshed out further in *Christopher v. Harbury*, 536 U.S. at 415, a case that provides the dispositive holding for the instant matter. In *Christopher*, the Court divided access-to-court claims into two categories. The first involved claims that the state was currently frustrating the plaintiff's attempt to prepare or file suit:

> In cases of this sort, the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.

*Id.* at 413. The second category covered claims that the state had impeded the plaintiff from bringing past claims that could not now be brought "or tried with all material evidence[,] no matter what official action may be in the future." *Id.* at 414. In both categories, "the point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-415. From this perspective, an access claim is merely "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* In other words, to adequately plead an access claim, the plaintiff must also plead the underlying claim that he was (or is) prevented from bringing. *Id.*

Under *Christopher*, the Sixth Circuit has explained that the deprivation of arguable underlying claims inflicts actual injuries "because it deprives [the plaintiff] of something

of value—arguable claims are settled, bought, and sold." *Roberts v. Wingard*, 210 F.3d 372 (Table), 2000 WL 377424, at *2 (6th Cir. 2000); *see also Hoard v. Reddy*, 175 F.3d 531, 533-534 (7th Cir. 1999) ("If a prisoner whose access to the courts is being blocked in violation of the Constitution cannot prove that, had it not been for the blockage, he would have won his case or at least settled it for more than $0 (the point emphasized in *Lewis*), he cannot get damages."). But "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Roberts*, 2000 WL 377424, at *2. Accordingly, a plaintiff does not state an access claim if he fails to state an underlying, non-frivolous claim. *J.P. v. Taft*, 439 F. Supp. 2d 793, 805 (S.D. Ohio 2006). This Court, for example, rejected an access claim because the plaintiff did show the validity of his underlying motion for relief from judgment, thus "fail[ing] to state a cause of action for a violation of his right to access of the courts under *Lewis*." *Mikko v. Davis*, 342 F. Supp. 2d 643, 648 (E.D. Mich. 2004).

In addition, because the gist of an access claim is the government's interference with an inmate's ability to bring a claim, a plaintiff must allege a "litigation-related detriment," such as that an inadequate prison law library caused him to miss a filing deadline or resulted in dismissal of a meritorious claim. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In other words, the plaintiff must "show[] that the defendants' actions foreclosed her from filing suit in a state court or rendered ineffective any state court remedy she previously may have had." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1263-1264 (6th Cir. 1997); *see also Howard v. Webster*, 339 F. App'x 616, 618 (7th Cir. 2009) ("The prisoner . . . must spell out in his complaint the connection between the alleged denial of access to the courts

and the actual, nonfrivolous injury."); *Funk v. Riska*, No. 11–cv–11409, 2011 WL 1641938, at *2 (E.D. Mich. May 2, 2011) ("Although he conclusorily claims that the lack of transcripts and other documents has prevented him from seeking habeas or similar relief, Funk has failed to adequately plead or prove that he has been unable to file a collateral challenge without the transcripts and documents. Moreover, there is no constitutional right to transcripts on collateral review of a conviction.").

Here, Plaintiff's access claim founders on these pleading requirements, as he fails to adequately allege an underlying claim or suggest how the lack of transcripts and records prevented him from accessing the courts. He purposefully avoids discussing the underlying claim, (R. 22, PageID.206), based on the not unreasonable concern that it would appear to attack on his conviction, which he cannot do in a § 1983 action. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994).

Yet this leaves his complaint with only conclusory allegations about the defects in his criminal proceedings. He cites a host of constitutional and statutory rules that were violated, but never says how. (R. 22, PageID.205-206, 210.) Nor do his attached papers shed light on his underlying claims. *Cf. Brown v. Matauszak*, 415 F. App'x 608, 609 (6th Cir. 2011) (holding that the complaint failed to state the underlying claim but an attached motion for relief from judgment demonstrated he would be able to state a claim). Consequently, he has failed to state his underlying claim, thus dooming his access claim under *Christopher*.

Plaintiff's access claim also fails because his complaint does not allege or address how the lack of transcripts and other records prevented him from accessing the courts. *See*

*Pilgrim*, 92 F.3d at 416. No such impediments are apparent. Plaintiff ran his case through the full appellate ladder, ending with the Michigan Supreme Court's denial of leave to appeal. *People v. Rose*, 495 Mich. 978 (2014). He also filed an unsuccessful habeas petition in this Court. *Rose*, 2017 WL 6493233, at *1. Without more, it is impossible to determine that Plaintiff's right to access the courts has been violated. Therefore, he has failed to state an access claim.[5]

---

[5] An alternative analysis of the access claim is possible, but does not provide as clear and comprehensive a resolution as the one discussed above. Section 1983 cannot be used to challenge a state conviction; habeas corpus is the exclusive remedy for such claims. *Heck*, 512 U.S. at 481. Consequently, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

This is known as the *Heck* bar, and its application to access claims is troublesome. *See Sprinkle v. Robinson*, No. 2:02–cv–1563, 2017 WL 1079833, at *5 (E.D. Cal. Mar. 22, 2017) ("In most cases, the application of Heck's favorable-termination rule is straightforward. However, access to courts claims such as this one—in which the plaintiff claims he was deprived of an opportunity to challenge his conviction or sentence because the defendant blocked him from doing so—present difficult questions about how that rule applies."). The question such cases present is whether a claim that a state official impeded a plaintiff's ability to collaterally attack a conviction or sentence necessarily implies the invalidity of that conviction or sentence. *Id.*

It appears that many courts have adopted the Seventh Circuit's approach, *id.*, which answers the question in the affirmative. In *Burd v. Sessler*, for example, the court noted that the plaintiff's access claim required demonstrating the underlying claim that he was entitled to withdraw from his guilty plea. 702 F.3d 429, 434-435 (7th Cir. 2012). To prevail, then, Plaintiff would need to imply or show that the underlying conviction was invalid—*Heck* barred any damages award in such cases, *id.*, although injunctive relief remained available, *Hoard*, 175 F.3d at 533. At least one court in this Circuit has adopted this view. *See Brown v. Johns*, No. 2:05-cv-43, 2007 WL 2363337, at *4 (W.D. Mich. Aug. 16, 2007) (applying *Heck*'s bar to monetary damages in an access claim).

Other courts have not applied the full *Heck* bar, but instead left open the possibility that certain damages can be awarded, like compensatory, nominal, or punitive. *See Canales-Robies v. Peters*, 270 F. Supp. 3d 1230, 1240 (D. Or. 2017); *Sprinkle*, 2017 WL 1079833, at *8-10. The rationale for doubting the wisdom of applying *Heck* to access claims is that *pro se* litigants will be trapped:

> When prisons deny prisoners their constitutional right to court access for state collateral review petitions, they prevent prisoners from challenging the legality of their convictions. If the prisoner attempts to assert his rights through a § 1983 claim but makes the mistake of pleading his claim as one for money damages, applying the Heck rule may insulate the underlying conviction from review despite the prison's potentially unconstitutional conduct.

Plaintiff might also be attempting to argue, in addition to his access claim, that Defendants violated his constitutional right to *free* transcripts and records, or that they impermissibly modified transcripts. His complaint is not entirely clear on this point. It mentions his efforts to purchase the records, citing MCR 8.108(E), which requires court reporters to furnish and charge for transcripts. (R. 22, PageID.207.) Yet, he has also attached a letter from the court indicating he would receive a free copy of the transcripts, (R. 22, PageID.225), and a declaration from a court reporter that one record is irretrievable, (R. 22, PageID.268.) The complaint also contains several conclusory statements that individuals altered or destroyed various records. *See, e.g.*, (R. 22, PageID.205.)

In any event, the Sixth Circuit has squarely stated that there is "no constitutional right to a transcript to prepare for a post-conviction proceeding," *Rickard v. Burton*, 2 F. App'x 469, 470 (6th Cir. 2001), and that "no constitutional violation occurs when a transcript does not exist and, consequently, it is unavailable to both sides," *Hays v. Newsom*, 3 F. App'x, 270, 272 (6th Cir. 2001). As the Tenth Circuit noted, an inmate seeking collateral relief has "no constitutional right to a free transcript to search for error

---

*Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 143 n. 4 (3d Cir. 2016). Another court similarly noted the "Catch-22" if *Heck* barred a prisoner from "bringing his access-to-court suit against defendants until he successfully overturns his conviction, but he cannot effectively challenge that conviction because defendants have (allegedly) confiscated important legal materials necessary to obtain post-conviction relief." *Arellano v. Blahnik*, No. 16-cv-2412, 2017 WL 3530896, at *2 (S.D. Cal. Aug. 17, 2017); *see also Lueck v. Wathen*, 262 F. Supp. 2d 690, 698-699 (N.D. Tex. 2003) (same).

Resolving this issue, however, is unnecessary when, as here, the cause of action underlying the access claim is frivolous or insufficiently stated, as it is here. *See Moore-Bey v. Cohn*, 69 F. App'x 784, 787 (7th Cir. 2003) (noting that it was unnecessary to analyze *Heck*'s bar because the plaintiff had not asserted that his underlying claim was valid or that he had any nonfrivolous postconviction claims). For that reason, *Heck* need not be applied here. Even were the Court to apply *Heck* here, Plaintiff's requests for injunctive relief would survive. Thus, a *Heck* analysis here would leave the case half-resolved, at best.

when [the inmate] has not demonstrated that his claim is not frivolous." *Negron v. Adams*, 229 F.3d 1164 (Table), 2000 WL 1152554, at *3 (10th Cir. 2000). Here, as noted above, Plaintiff has not suggested any plausible errors that the transcripts would reveal, and his request instead looks like an effort to fish for an error. Thus, any claim that Plaintiff was owed free transcripts would fail.

Further, Plaintiff has no constitutional right to a perfect transcript. *Hampton v. Segura*, 276 F. App'x 413, 415 (5th Cir. 2008). Aside from his conclusory allegations, he has pleaded no facts to support his claim that any transcripts were modified or destroyed. *See Whittaker v. Geyer*, No. 2:18-cv-11472, 2018 WL 3839396, at *2 (E.D. Mich. Aug. 13, 2018) (finding that similarly bare contentions failed to "to satisfy minimum pleading requirements"). He has not, for example, identified any tinkering with the transcripts, nor has he explained how any changes were detrimental to his case. For this reason, any claims that the transcripts were unconstitutionally altered or destroyed must fail.

Finally, the Court must consider whether to dismiss the claim with or without prejudice. In at least two cases, the Sixth Circuit has found that district courts abused their discretion by foreclosing amendment of unsuccessful access claims where the pleading defect was the failure to state an underlying claim. *Tolliver v. Noble*, __ F. App'x__, 2018 WL 4944991, at *6 (6th Cir. 2018); *Brown*, 415 F. App'x at 616. In *Brown*, the court noted that

> generally, "[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1483 (3d ed. 2010). "Particularly where deficiencies in a

19

> complaint are attributable to oversights likely the result of an untutored pro
> se litigant's ignorance of special pleading requirements, dismissal of the
> complaint without prejudice is preferable." *Reynoldson v. Shillinger*, 907
> F.2d 124, 126 (10th Cir.1990) (citing *Guerrero v. Hauck*, 502 F.2d 579, 580
> (5th Cir. 1974) (dismissal of pro se prisoner complaint with prejudice
> constituted reversible error when defects might have been cured by
> amendment)).

415 F. App'x at 614-615. In that case, the plaintiff's § 1983 claim was deficient for failing

to state the underlying claim, but an attached motion for relief from judgment demonstrated

that the plaintiff could state such a claim. *Id.* at 608-609. Accordingly, the Sixth Circuit

concluded that the district court abused its discretion by not *sua sponte* allowing the

plaintiff to amend his complaint. *Id.* at 616.

As in *Brown*, the plaintiff's argument in *Tolliver v. Noble*—the second relevant case

from the Sixth Circuit—had more merit than Plaintiff's here: the *Tolliver* plaintiff indicated

he intended to file an amended complaint to cure the relevant defects, actually sent it a day

after the dismissal, and the new allegations were "more fully detailed" and

"comprehensive." 2018 WL 4944991, at *6-7. Finding that the district court abused its

discretion by refusing to consider the plaintiff's request to amend, the court "note[d] the

inherent difficulty in pleading a 'claim within a claim,' as required for Tolliver's access-

to-the-court claim." *Id.* at *7.

In this case, Plaintiff has not demonstrated that he will be able to state a claim—yet

nothing indicates that he is unable to state one. He simply failed to try. While he may not

have come as close as the plaintiffs in *Brown* and *Tolliver*, and granting leave to amend

now would be premature, those cases nonetheless support the conclusion that Plaintiff

should not be foreclosed from bringing this claim again in a properly pleaded complaint. For that reason, I recommend dismissing the claim without prejudice.[6]

### d.   Other Claims

Plaintiff's other contentions are discernable only in his "legal claims" section and only by his bare citations of various laws. (R. 22, PageID.214-220.) Many of the claims are from Michigan law, including the state constitution, statutes, court rules, and perhaps in addition the tort of intentional infliction of emotional distress. (*Id.*) Plaintiff's invocation of these laws must fail because 42 U.S.C. § 1983 claims cannot be premised on violations of state law. *Peterson v. Burris*, No. 14-cv-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) (citing *Laney v. Farley*, 501 F.3d 577 (6th Cir. 2007)). Nor does the United Nations Declaration of Human Rights, another document Plaintiff cites, allow for private rights of action. *Konar v. Illinois*, 327 F. App'x 638, 640 (7th Cir. 2009) (citing inter alia *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)). Those claims should likewise be dismissed.

---

[6] Plaintiff would not be time-barred from refiling the claim. The applicable limitations period for an access claim under § 1983 comes from state law, specifically Mich. Comp. Laws § 600.5805, which provides three years from the time of injury. *See Johnson v. Freed*, No. 09–CV–14371, 2010 WL 3907224, at *1 (E.D. Mich. Sept. 27, 2010) (citing *McCune v. Grand Rapids*, 842 F.2d 903 (6th Cir.Mich.1988)). Similarly, state tolling rules apply to § 1983 actions, the relevant provision here being Mich. Comp. Laws § 600.5856. *See McCune*, 842 F.2d at 906. Under that statute, the limitations period is tolled when the complaint is filed. The Michigan Court of Appeals has held that "[w]here a suit is commenced, but later dismissed without prejudice, the statute is tolled for the period of time during which the court had jurisdiction over the defendant, and thereafter the statute begins to run again." *Smith v. Bordelove*, 63 Mich. App. 384, 387 (1975) (citing a case interpreting § 5856).

Here, the earliest events Plaintiff describes in his complaint transpired sometime in February 2016. (R. 22, PageID.204.) Plaintiff filed his complaint on December 6, 2018, (R. 1), within three years of those events. Assuming the claim accrued around those early events, he has at least roughly two months left on the statute of limitations, which would recommence if this case were dismissed without prejudice.

This leaves Plaintiff's other federal constitutional claims. His argument regarding the First and Fifth Amendments relates to his access claim, which was addressed above.[7] He also says that his Fourth Amendment right to freedom from "unreasonable seizure of 'papers, property', effects and persons" was violated. (R. 22, PageID.214.) Presumably, he means that the transcripts and records he asked for were his, and that their destruction or Defendants' failure to hand them over constituted an unconstitutional seizure.

A Fourth Amendment violation can occur when the state wrongfully retains property, interfering with the plaintiff's possessory interest. *Fox v. Van Oosterum*, 987 F. Supp. 597, 608 (W.D. Mich. 1997) (citing *Soldal v. Cook Co., Ill.*, 506 U.S. 56, 61 (1992)). But Plaintiff here has not alleged that he maintained a possessory interest in any records, nor does any reasonable inference of such an interest arise. "Possession" means the fact of possessing an object or the right to possess or control it; constructive possession occurs when a person has the power and intent to control a thing, either directly or indirectly. *People v. March*, 499 Mich. 389, 415 (2016). None of Plaintiff's allegations indicate he ever had the right or power to control the disputed records. He has not claimed, for example, that he paid for records that were never provided—in fact, he states he was prevented from paying. Nor does he state that he possessed the papers in the past. It does not appear, even, that the transcripts he desired had yet been created for him to possess. Consequently, I conclude that his Fourth Amendment claim fails.[8]

---

[7] The Supreme Court has cited all these amendments as sources of the right to access courts. *See Christopher*, 536 U.S. at 415 n.12.

[8] As an aside in his complaint, Plaintiff notes that a letter he hoped to mail was "denied by prison official[] [a]fter the content was read." (R. 22, PageID.211.) He goes on to claim that prison officials "constantly

It is not at all clear how Plaintiff thinks his rights under the Sixth Amendment were violated. None of the present allegations about accessing the courts involve a criminal prosecution, and while his underlying claims appear to implicate one, he has not provided the facts necessary to state those claims.

The basis for his Eighth Amendment claim is also uncertain. Apparently, he believes that Defendants' failure to provide him records, and the possible destruction of those records, constitutes a cruel and unusual punishment. From one perspective, this is simply his access claim decked in Eighth-Amendment garb. It is not uncommon for prisoners to raise Eighth Amendment claims "when they challenge violations of other constitutional provisions," and in such cases the Eighth-Amendment overlay adds little and is often disregarded—if the prisoner fails to prove a violation of the more specific constitutional provision, then it is unlikely that the same conduct will amount to cruel and unusual punishment. Michael Mushlin, *Rights of Prisoners* § 2.01 (2d ed.).

That is what happened here. As noted above, plaintiffs have no constitutional right to free transcripts in order to search for errors to raise collaterally. *Rickard*, 2 F. App'x at 470. Consequently, it is difficult to imagine that denial of those transcripts can be considered cruel and unusual. In any event, like the court in *Mathis v. Bess*, 763 F. Supp. 58, 61 (S.D. N.Y. 1991), I am unaware of any authority clearly establishing that delays in providing transcripts violate the Eighth Amendment. The Amendment applies to criminal

---

violate [his] legal mail confidentiality" and that a prison counselor was overheard "conspiring to cause legal injury" to Plaintiff. (R. 22, PageID.212.) Nothing suggests that this forms the basis for the Fourth Amendment claim, as he does not name any Defendants who seized or searched his mail and he merely mentions that he has filed a grievance on the matter. (R. 22, PageID.211.)

punishments, or judgments sufficiently analogous to criminal punishments. *Ingraham v. Wright*, 430 U.S. 651, 669 & n.37 (1977). The actions Plaintiff protests were not imposed as part of a criminal punishment, or anything resembling one. For these reasons, I conclude that Plaintiff has failed to state a claim that his Eighth Amendment rights were violated.

Finally, Plaintiff claims that he was "subjected to unequal application of the law in violation of . . . [the] Ninth and Fourteenth Amendments equal protection clauses." (R. 22, PageID.215.) This claim is no different than the others—he fails to shed any light on how either Amendment was violated. Regarding the Ninth Amendment—which has no express equal protection clause—he does not explain which unenumerated rights Defendants flouted or how. In any case, "the ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). His unadorned citation to it, therefore, offers no relief.

The Fourteenth Amendment's equal protection clause "safeguards against the disparate treatment of similarly situated individuals as a result of government action that 'either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Paterek v. Village of Armada, Mich.*, 801 F.3d 630, 648-50 (6th Cir. 2015). Plaintiff has not alleged that similarly situated individuals receive more favorable treatment or that he is a member of a suspect class. To the extent he is challenging a burden on a fundamental right or the lack of a rational basis for Defendants' actions, that claim folds into his access claim, as the only right he invokes is to access the courts and the Supreme Court has explained that the equal protection clause gives rise to this right. *Christopher*, 536 U.S. at

24

415 n.12. No other independent Fourteenth Amendment claim is discernable in the complaint.

Therefore, I recommend that these claims be dismissed without prejudice for failure to state a claim. *See Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 423 (5th Cir. 2017) ("'When the dismissal of a pro se complaint is appropriate, it should generally be done without prejudice.'"); *Belizan v. Herson*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("The standard for dismissing a complaint with prejudice is high: 'dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" (citation omitted)).

### 4.     Motions for Injunctive Relief (R. 2, 9, 21)

Plaintiff has now filed three motions for injunctive relief, each asking for a preliminary injunction and a temporary restraining order under Federal Rule of Civil Procedure 65. (R. 9, 21.) The last two motions appear nearly identical, (R. 9, 21), and each is simply an extended version of the first, (R. 2), although the most recent motion adds a little over a page of legal arguments, noting that the Supreme Court's decision on access claims in *Christopher* applies here and reiterating that Defendants destroyed his papers in retaliation for his efforts to secure postconviction relief. (R. 21, PageID.196-197.) The new motion also comes with a supporting affidavit of facts, which rehashes facts, procedural history, and legal arguments. (R. 20.)[9]

---

[9] The second motion was also accompanied by a similar, slightly shorter affidavit. (R. 9, PageID.137-141.)

Both motions ask the Court to compel Defendants to produce the records he has requested in his complaint. (R. 9, PageID.128; R. 21, PageID.188.) Without these documents, he says, he will continue to suffer irreparable harm by being imprisoned when he is, in fact, entitled to be released through postconviction relief. (R. 9, PageID.129-131; R. 21, PageID.189-191.)

Because I recommend dismissing Plaintiff's case, I also recommend denying these motions as moot. *See Nat'l Civic Committee v. Mich. Dep't of Corrections*, No. 09–13976, 2010 WL 3952236, at *1 (E.D. Mich. Oct. 8, 2010) (holding that motions for a preliminary injunction and temporary restraining order were moot when the case had been dismissed). Moreover, both of the requested forms of injunctive relief are intended to maintain the status quo. *Id.* Plaintiff's attempt to use them here would disrupt the present state of affairs and give him nearly all he seeks in his complaint. For that reason, even if the motions were not moot, their basis is questionable at best.

And, if Plaintiff somehow could make it past these obstacles, injunctive relief would still be beyond his grasp. Both a preliminary injunction and a temporary restraining order require the moving party to show that it risks irreparable harm without the relief. Fed. R. Civ. P. 65(b)(1)(A); *Lumpkins-El v. Dep't of Corrections*, 3 F. App'x 401, 402 (6th Cir. 2001). Here, the threatened irreparable harm is continued imprisonment, but as discussed above, Plaintiff has not specified the errors in his underlying criminal proceedings or explained how the requested materials would allow him to overturn his conviction or sentence. For the temporary restraining order, in particular, he needed to show that irreparable injury would occur before the adverse party could respond—no such showing

has been made. And for the reasons above, Plaintiff lacks the strong likelihood of success on the merits needed to support a preliminary injunction. *Lumpkins-El*, 3 F. App'x at 402. Thus, the motions fail even if not moot.

Accordingly, I recommend dismissing these motions as moot.

## III.    Conclusion

For the reasons above, I recommend (1) **GRANTING** Plaintiff's motions to amend (R. 7, 22), (2) *sua sponte* **DISMISSING** Defendant Wayne County with prejudice, (3) *sua sponte* **DISMISSING** the remaining claims without prejudice, and (4) **DENYING** Plaintiff's motions for injunctive relief, (R. 2, 9, 21).

## IV.    Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Caldwell v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 20, 2019

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Willie Rose #235893 at Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784.

Date: February 20, 2019

By s/Kristen Castaneda
Case Manager