UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE ROSE,

                Plaintiff,                        Case Number 18-13786

v.                                        Honorable David M. Lawson
                                                        Magistrate Judge Patricia T. Morris

WAYNE COUNTY, WYLENE
ABDULLAH, CATHY GARRETT,
TAMMI PALMER, BARBARA BROWN,
MILTON MACK, JENNIFER PHILLIPS,
and ROBERT FICANO,

                Defendants.

_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION,
OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING MOTIONS TO AMEND
COMPLAINT, DENYING MOTIONS FOR PRELIMINARY INJUNCTION,
DISMISSING DEFENDANT WAYNE COUNTY WITH PREJUDICE, AND
DISMISSING REMAINING CLAIMS WITHOUT PREJUDICE**

Plaintiff Willie Rose, a Michigan Department of Corrections prisoner, pleaded guilty in the

Wayne County, Michigan circuit court to assault and firearms charges. After he was sentenced to

prison, he pursued unsuccessful appeals in the state appellate courts and filed a petition for a writ

of *certiorari* in the United States Supreme Court. He also sought and was denied federal habeas

relief. He apparently wants to mount additional challenges to his convictions, as he has endeavored

and failed to obtain records — including transcripts — from the state courts. That quest brings

him here, with a lawsuit brought against several court and Wayne County officials in which he

alleges that their intransigence has frustrated his efforts and denied him access to the courts. The

case was referred to Magistrate Judge Patricia Morris for pretrial management, and she conducted

a screening, which courts must complete when indigent prisoners file civil rights complaints in

federal court. *See* 28 U.S.C. §§ 1915(e), 1915A(a). Judge Morris filed a report recommending

that the Court allow the plaintiff's serial amendments to the complaint, deny his various motions

for injunctions, dismiss Wayne County with prejudice, and dismiss the case against the other defendants without prejudice. The plaintiff objected to the recommendation, and the case is before the Court for fresh review.

Since the recommendation was filed, the plaintiff has filed multiple sets of objections and more amended complaints. The Court has considered them all. They still suffer from the same defects identified by the magistrate judge. The plaintiff also filed a document received on September 18, 2019 asking that the case not be decided before September 20, as he wanted to file other materials. No additional documents have been received. Therefore, the Court will adopt the recommendation, deny the motions for injunctions, dismiss Wayne County as a defendant with prejudice, and dismiss the remaining claims without prejudice.

## I.

Rose pleaded guilty in August 2012 to assault with intent to commit murder, felon in possession of a firearm, and possession of a firearm while committing a felony. He alleges that his procedural and substantive due process rights were violated in his original criminal case and he asserts that he is attempting to right those violations by filing a motion for relief from judgment in the state court. He contends that his impending motion is predicated on evidence contained in transcripts of his court hearings and other records, which he has been unable to obtain from the numerous defendants named in this suit. Rose alleges that the defendants' refusals to turn over the documents are preventing him from utilizing post-conviction relief procedures and constitute additional constitutional violations of his First Amendment right to access the courts and other unspecified violations of his Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights.

The plaintiff began his search for his transcripts by requesting them from defendant Franceschi, a court reporter, in 2016, but he contends that he was denied access because he was

indigent. The plaintiff also wrote to defendant Palmer, a supervisor, to obtain court documents related to his criminal case but received no response. The plaintiff then turned to defendants Barbara Brown and the Wayne County Executive Office in 2016 and 2017 but was similarly unable to obtain the documents. The plaintiff alleges that he finally received transcripts from defendant Franceschi in 2018, but that they were only partial records of the hearings because defendant Franceschi "withheld, concealed, altered and/or destroyed records" from various proceedings. ECF No. 40, PageID.675.

In September 2018 the plaintiff contends that Judge Donald Knapp ordered defendant Abdullah, another court reporter, to "produce free transcripts for court proceedings" but Abdullah failed to do so. ECF No. 40, PageID.676. The plaintiff believes that Abdullah chose to seize and destroy the records instead of turning them over to the plaintiff. ECF No. 40, PageID.677. The plaintiff also alleges that Wayne County officials — defendants Ficano, Garrett, and Phillips — became aware of Abdullah's "custom of invidiously withholding transcript records from defendants as far back as 2009," and chose not to institute any corrective action. ECF No. 40, PageID.678.

In October 2018, the plaintiff submitted "pleadings" to the Wayne County Circuit Court, the Michigan Court of Appeals, and the Michigan Supreme Court unsuccessfully requesting assistance in obtaining other records, including the "Prosecutor's file, Police file, Pre-trial services bond reduction report and psych report." ECF No. 40, PageID.681. In November, the plaintiff wrote to defendant Mack, the state court administrator, requesting documents and records, also to no avail. The plaintiff then wrote to defendant Phillips in an attempt to purchase the documents but was once again unsuccessful. The plaintiff's family and friends tried to obtain the documents, talking to numerous defendants via telephone, but they could not get them, either.

In December 2018, the plaintiff alleges, he received proof that defendant Pickett maliciously destroyed his transcripts instead of allowing the plaintiff access to them. The plaintiff also alleges that Palmer either lied about the existence of specific transcripts or confirmed that Abdullah had willfully and intentionally destroyed the records. In his subsequent amended complaints, the plaintiff contends that the defendants' various actions amount to violations of his constitutional rights.

On December 6, 2018, the plaintiff filed a complaint in this Court under 42 U.S.C. § 1983 describing the alleged injuries he suffered because of numerous government officials' failures to turn over documents from his original criminal case. He also filed a motion for preliminary injunction and temporary restraining order to compel the defendants to produce those transcripts.

Eleven days later, the plaintiff filed an amended complaint to add three more defendants to the case, Doreen Pickett, Theresa Roberts, and Carla Franceschi — government officials that he says similarly violated his rights by denying him access to transcripts and reports. He also filed a second motion for preliminary injunction and temporary restraining order, again asking that the defendants be forced to produce documents.

The Court granted the plaintiff's application to proceed *in forma pauperis* and referred the case to Magistrate Judge Morris for general case management under 28 U.S.C. § 636(b). On January 29, 2019, the plaintiff filed a third motion for preliminary injunction or temporary restraining order, again asking the Court to order production of the transcripts. He also filed a second amended complaint, alleging more incidents where defendants had failed to turn over documents.

After Judge Morris issued her report and recommendation, the plaintiff filed two sets of objections, one on March 11, 2019 and another the next day. Both sets of objections take issue

with, among other things, Magistrate Judge Morris' characterization of the plaintiff's legal claims, his lack of opportunity to conduct discovery, and the suggested with-prejudice dismissal of defendant Wayne County.

On May 10, 2019 the plaintiff filed another amended complaint and additional objections to Magistrate Judge Morris' report and recommendation. The plaintiff's amended complaint raises legal arguments already discussed in prior pleadings and maintains that the defendants continued refusal to turn over transcripts violates his rights. In his additional objections, the plaintiff reiterates that his constitutional rights have been violated, and again raises arguments against dismissing Wayne County as a party. On May 16, 2019 the plaintiff filed the most recent amended complaint, once more asking the Court to recognize that the defendants violated his constitutional rights by withholding transcripts and recordings. None of the amended pleadings were filed with leave of court.

II.
A.

Magistrate Judge Morris recommended that Rose's motions to amend his complaint be granted, even though none of the amendments would salvage the complaint or any of Rose's claims. The same can be said for the later-filed pleadings. It is not clear why the magistrate judge did not simply grant the amendments herself, since she had the authority to do so under the order of reference. *See Gentry v. Tennessee Bd. of Judicial Conduct*, No. 17-00020, 2017 WL 2362494, at \*1 (M.D. Tenn. May 31, 2017) ("Courts have uniformly held that motions to amend complaints are non-dispositive matters that may be determined by the magistrate judge and reviewed under the clearly erroneous or contrary to law standard of review set out in 28 U.S. § 636(b)(1)(A) and Rule 72(a), Federal Rules of Civil Procedure.") (citing cases). Nonetheless, the Court agrees with

that part of the recommendation, the motions to amend the complaint will be granted, and the Court will allow all the amendments.

## B.

The magistrate judge's report was submitted after she screened the case for merit. When, as here, a plaintiff has asked the Court to waive fees and costs because he cannot afford to pay them, the Court has an obligation to screen the case for merit and dismiss the case if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In addition, Congress mandated in the Prison Litigation Reform Act (PLRA) that the Court screen for colorable merit every prisoner complaint filed against a state or governmental entity. 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.")

A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "A complaint lacks an arguable basis in law or fact if it ... is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke*, 490 U.S. at 327-28). Dismissal on the Court's initiative is appropriate if the complaint lacks an arguable basis when filed. *Goodell v. Anthony*, 157 F. Supp. 2d 796, 799 (E.D. Mich. 2001).

### 1.

The magistrate judge recommended that Wayne County be dismissed from the case "with prejudice" because the plaintiff did not plead any facts that could show that the county violated

the plaintiff's federal rights through any policy, custom, or practice. The plaintiff filed several objections, one of which was directed to this recommendation.

When objections are filed, the Court must "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed

[to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380). "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

In his eighth objection, Rose says his claim against the county should survive because, "by the county being aware of the abuse and not taking action[,] the county is liable when its employee continue[d] to engage in the custom." That argument does not persuade.

First, *respondeat superior* is not a basis for liability under section 1983; "a municipality may not be held liable . . . solely because it employs a tortfeasor." *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014) (quoting *Monell v. New York City Dept. of Soc. Servcs.*, 436 U.S. 658, 691 (1978). To state a claim under 42 U.S.C. § 1983, the plaintiff must plead and "prove that action pursuant to official municipal policy caused their injury." *Monell*, 436 U.S. at 691.

Second, allegations of awareness of wrongful conduct and a failure to act are not enough to establish a policy or custom. *J.D.D., Inc. v. Charter Twp. of Clinton, Mich.*, 576 F. App'x 576, 578 (6th Cir. 2014). Instead, the plaintiff "must show a 'conscious decision not to act,' not merely 'a collection of sloppy, or even reckless, oversights.'" *Ibid.* (quoting *Doe v. Claiborne Cnty., Tenn. by & through Claiborne Cnty. Bd. of Educ.,* 103 F.3d 495, 508 (6th Cir. 1996). Nothing in the complaints permits that inference.

Third, contrary to the plaintiff's insistence, defendant Abdullah's alleged failure to turn over transcripts is not a "custom." A custom in this context must be established by facts showing (1) a clear and persistent pattern of illegal activity, (2) notice to the municipal defendant, (3) the municipality's "tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction," and (4) that the custom was the "moving force" in the constitutional deprivation. *Thomas v. City of*

*Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). There are no pleaded facts suggesting that Abdullah engaged in a pattern of ignoring transcript requests, nor is there a suggestion in the complaints that county officials intentionally chose not to take action against him, or that they condoned his conduct.

Rose cites *Tate v. Townsend*, No. 09-12234, 2009 WL 2144419 (E.D. Mich. July 13, 2009), in support of his objections, but that case does not help him. In *Tate*, defendant Abdullah was dismissed from the suit based on quasi-judicial immunity and the Court never addressed the merits of the claim. 2009 WL 2144419, at *2. The plaintiff has not pleaded any other facts that would establish that there was a persistent pattern of withholding transcripts. Without facts showing a pattern, the plaintiff cannot show a custom. *See Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (holding that prison officials' alleged failure to deliver one letter did not rise to a constitutional violation).

The eighth objection will be overruled.

2.

a.

Although the plaintiff cited several constitutional amendments in support of his grievances over his inability to obtain court records, the magistrate judge viewed the complaint (and amendments) as pleading a claim for denial of access to the courts, which is protected by the First Amendment. *See Bounds v. Smith*, 430 U.S. 917, 821 (1977) (holding that "[i]t is beyond doubt that prisoners have a constitutional right of access to the courts"). As the magistrate judge explained, such claims can be "forward-looking" or "backward-looking." *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Backward-looking claims accuse the government or the state of "barring the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim." *Flagg v. City of Detroit*, 715 F.3d

165, 173 (6th Cir. 2013) (citing *Christopher*, 536 U.S. at 413-14). A forward-looking claim is different in that the plaintiff accuses the state of "creating or maintaining some 'frustrating condition,' that stands between the plaintiff and 'the courthouse door.'" *Ibid.* (citing *Christopher*, 536 U.S. at 413).

Rose's claim here is forward-looking because he seeks court records so he can file a post-conviction motion in the state court in the future, and he says that the state is frustrating that attempt by denying him access to those records. To plead a viable forward-looking access-to-the-courts claim, the plaintiff must recite facts in his complaint that describe (1) "the official acts frustrating the litigation," and (2) "the underlying cause of action" that he wants to bring but cannot. *Christopher*, 536 U.S. at 415. "[I]n forward-looking [actions,] to remove roadblocks to future litigation, the . . . plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim," and "the predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16. For an access case to advance, "the underlying cause of action . . . must be addressed by allegations in the complaint sufficient to give fair notice to a defendant," just "[l]ike any other element of an access claim." *Id.* at 416 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-15 (2002)).

The magistrate judge suggested in her report that the plaintiff did not describe in the many versions of his complaint his underlying claim in a non-conclusory way that would permit the Court to determine that it would be non-frivolous. In addition to objection number 8, discussed above, the plaintiff filed 17 other objections, some repetitive.

In his first and tenth objections, the plaintiff disagreed with the magistrate judge's recommendation to dismiss the case for failure to state a claim, asserting that his subsequent amended complaints and other submissions have satisfied the pleading standard, stating "[i]n short,

these violations are verified through the complaints, affidavits, and they do not require additional proof of underlying conduct." ECF No. 31, PageID.395. These documents taken together do not suggest that Rose has a non-frivolous claim that has been frustrated by any defendant's failure to produce records.

The plaintiff insists that he has identified two claims that the withheld records would support: (1) investigating officers did not respect his right to remain silent and instead threatened him with a high bail in retaliation for his refusal to give a confession, and (2) the high bail caused the plaintiff to lose his retained counsel of choice and the subsequent court appointed attorney rendered ineffective assistance of counsel.

The first claim is frivolous, especially considering that the plaintiff's guilty-plea-based conviction has been affirmed by the state courts at every level. That is because "[a] defendant waives his right to appeal constitutional violations occurring prior to a plea of guilty once the defendant enters his plea." *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007). The Supreme Court has held that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Putting a finer point on this idea, the Court explained that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Ibid.* Nothing in any of the records could change that reality.

The argument that the arresting officer recommended a high bail fails for the same reason. But the plaintiff mentions that the high bail rendered him unable to afford his retained lawyer, and he complains that the court-appointed substitutes did not perform well. That aspect might lead to a viable argument by following this path: a guilty plea could be attacked because it is involuntary,

*United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005), and the voluntariness of a plea depends upon "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases,'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

To present a non-frivolous claim here, it is not enough to show that his retained lawyer might have done a better job. "[W]hen a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." *Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001). The plaintiff, therefore, must present a colorable argument that the lawyers who did represent him performed deficiently and that he suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Rose alleged that he had three court-appointed attorneys: [first name] Michon, [first name] Polk, and an unnamed lawyer. He has not clearly stated which of the lawyers performed deficiently. He does say, however, that one of the lawyers rendered ineffective assistance because at one of his proceedings "the court appointed attorney appeared to talk to [plaintiff] about his defense just minutes before entering the court," ECF No. 40, PageID.823, and "[did] not introduced himself, did not know [the plaintiff's] name, and did not come to the back bullpen to introduce or discuss strategy for challenging the case," ECF No. 40, PageID.756. Next, he says that Ms. Michon failed to develop the record in order to demonstrate there was a justifiable use of force, because her questioning (presumably at a preliminary hearing, since there was no trial) "was not presented right by the court appointed counsel due to counsel being unprepared, and impeded from asking questions that would have developed the record for a showing of justifiable use of force." ECF No. 40-1, Page.ID.825. Finally, the plaintiff alleges that attorney Polk sought to obtain a psychiatric evaluation, but one was never conducted.

Missing from these allegations is any fact supporting a finding of prejudice. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In all of his filings, the plaintiff has never suggested that any of these mistakes affected his decision to plead guilty, or that he would have insisted on going to trial. Therefore, the plaintiff's second argument does not constitute a non-frivolous claim that he could bring even if the missing records were made available.

The failure to identify a non-frivolous underlying claim is fatal to the plaintiff's argument that he has stated a viable access-to-the-courts claim. Coupled with the reality that there is "no constitutional right to a transcript to prepare for a post-conviction hearing," *Rickard v. Burton*, 2 F. App'x 469, 470 (6th Cir. 2001), the magistrate judge properly recommended dismissal of the plaintiff's several iterations of his complaints alleging denial of access to the courts.

The plaintiff's first and tenth objections will be overruled.

b.

The magistrate judge concluded that the plaintiff's claim should be dismissed without prejudice, citing a line of cases holding that a *pro se* litigant should be given latitude when the defect in the access claim is the failure to state a non-frivolous underlying claim. *See Brown v. Matauszak*, 415 F. App'x 608, 614-16 (6th Cir. 2011) (citing cases). The general thrust of these cases is that when a dismissal is caused generally by "an untutored pro se litigant's ignorance of general pleading requirements," *id.* at 614 (quoting *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990)), the dismissal should be without prejudice.

Here, Rose has had several opportunities to present additional filings, including amended complaints, both before and after the magistrate judge issued her report and recommendation. As

noted earlier, the Court has considered the submissions as part of Rose's pleadings and analyzed them in its *de novo* review. It is unlikely that Rose ever will be able to state a valid access claim. Nonetheless, the dismissal of that claim will be without prejudice, permitting Rose to file a new lawsuit if he can state facts showing a non-frivolous underlying claim.

3.

In multiple objections, Rose takes issue with the magistrate judge's characterization of his legal claims as too narrow when she suggested that the complaint in essence asserts an access-to-the-courts claim. Instead, he insists that he suffered violations of his rights under the Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments. The magistrate judge addressed those theories and found them wanting.

His Fourth Amendment claim is premised on the theory that court reporter Abdullah "willfully and intentionally" withheld transcripts that were produced under court order. The magistrate judge suggested that the submissions did not state a claim because the plaintiff failed to attach the court order. That conclusion was erroneous, however, because the court order was included in every complaint the plaintiff filed.

Based on that court order, the plaintiff alleges throughout his complaints and objections that defendant Abdullah unlawfully seized those transcripts. It is true that "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 906 (6th Cir. 2019) (citing *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016)). But there is no indication in any of the plaintiff's submissions that the transcripts ever were created, or that any of the defendants, including Abdullah, ever possessed them. Even considering the concept of constructive possession — which "occurs when a person knowingly has the power and the intention at a given time to

exercise dominion and control over an object, either directly or through others," *United States v. Amerson*, 886 F.3d 568, 576 (6th Cir. 2018) (citing *United States v. Jackson*, 877 F.3d 231, 238 (6th Cir. 2017)) — there is no allegation of fact in any of the plaintiff's filings from which one might infer that he possessed property that was seized from him. Therefore, although the magistrate judge incorrectly stated that the Court had not yet received a copy of the previous court order, she was correct in stating that the plaintiff's Fourth Amendment claim fails.

4.

In his fourteenth objection, the plaintiff asserts that "his Sixth Amendment right was violated with access to the court claims." ECF No. 31, PageID.399. The plaintiff did not elaborate on that allegation; he stated only that the violation "is made clear in the motion to Judge Knapp . . . and in the new affidavit that [he] submitted." *Ibid*. Without pleading facts that would support a claim for relief, the plaintiff's assertion is nothing more than a conclusory statement. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)) ("Although Rule 8 does not constitute a 'hyper-technical, code-pleading regime,' it 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions'"). Therefore, the magistrate judge was also correct to conclude that the plaintiff's Sixth Amendment claim should be dismissed.

5.

In the fifteenth objection, the plaintiff challenges the recommendation to dismiss his Eighth Amendment claims. The magistrate judge concluded that the claim failed to satisfy pleadings standards. Rose's stated theory is that Abdullah's practice of withholding transcripts from litigants amounts to some sort of punishment of citizens who seek court records.

The Sixth Circuit has recognized two types of claims under the Eighth Amendment: (1) claims for "unnecessary and wanton infliction of pain" *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011), and (2) claims for defects in an individual's conditions of conferment that "are so serious that they deny him 'the minimal civilized measure of life's necessities,'" *ibid*. at 455 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The plaintiff's claims do not relate to "deprivations of essential food, medical care or sanitation" within the prison where he resides, nor does he allege that he was subjected to physical abuse from officials within the prison. *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Rather, he contends that defendant Abdullah's repeated failures to turn over requested documents constitutes "vigilante justice" and goes on to state that "vigilante justice is not just illegal[;] it is cruel and unusual punishment." The magistrate judge correctly determined that those statements do not establish a basis for an Eighth Amendment claim of either type. The fifteenth objection will be overruled.

6.

In his seventeenth objection, the plaintiff contests the dismissal of a claim he brought ostensibly under the Ninth Amendment, asserting that his rights were violated because "Judge James A. Callahan construed the constitutional rights of Plaintiff as not applicable while giving them to others." Objs., ECF No. 31, PageID.401. The plaintiff contends that this violation occurred when Judge Callahan "talk[ed] to him in a disparaging tone for trying to exercise his right to effective counsel." Objs., ECF No. 29, PageID.374. However, the Sixth Circuit has held that "the Ninth Amendment does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). Therefore, the magistrate judge correctly concluded that the plaintiff's claim for relief under the Ninth Amendment fails. His objection will be overruled.

In objections two, three, nine, eleven, twelve, and sixteen, the plaintiff repeatedly asserts that the magistrate judge should have recognized his claim that his Fourteenth Amendment equal protection rights were violated. The equal protection clause "prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Sullivan v. Benningfield*, 920 F.3d 401, 408 (6th Cir. 2019) (citing *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011)). Within those objections, the plaintiff identifies two ways he was subjected to government sponsored discrimination: (1) he was not given the opportunity to conduct discovery in this case, and (2) he was denied the opportunity to purchase records from state administrative office while others were not.

On the first point, the plaintiff mistakenly concludes that by referring his case to the magistrate judge, this Court has already conducted the initial screening required by section 1915 and concluded that his pleadings "verif[y] constitutional violations." ECF No. 31, PageID.388. The plaintiff remarks in his second objection that "after a district Judge orders a case to move on after initial screening[, it is] referred to a magistrate judge for case management . . ." *Ibid*. Based on that misunderstanding, the plaintiff asserts that he is being treated differently than previous litigants "who have had the opportunity to engage in discovery to help develop the facts of the case." *Ibid*. However, when the Court referred the case to the magistrate judge, screening had yet to be conducted. Therefore, the plaintiff has not been denied the privilege of discovery because the time for discovery has not yet begun, since the case is still at the initial screening stage. Moreover, the lawsuit concerns the alleged violations of the plaintiff's rights by the defendants,

not this Court, and the plaintiff has not alleged that any defendants have obstructed his right to discovery here.

The plaintiff's second equal protection claim must fail because he did not include sufficient factual information, instead only providing general statements. The plaintiff has not asserted that he belongs to a suspect class, such as one "defined by race, alienage, or national origin," *Maye v. Klee*, 915 F.3d 1076, 1086 (6th Cir. 2019). Instead, he must rely on a "class of one theory" for relief. The Supreme Court "ha[s] recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 905 (6th Cir. 2019) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). But the plaintiff has not identified other comparable prisoners who sought court records and who were treated more favorably than him. Instead, he merely repeats that "similarly situated citizens have been allowed to purchase records from the Court and state administrative office . . . but plaintiff Rose has not been allowed too." ECF No. 31, PageID.395. Again, conclusory allegations will not support a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (stating that "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements"). The magistrate judge properly concluded that this theory would not pass screening.

Similarly, the plaintiff has not successfully pleaded a claim under the Due Process Clause. Rose argues that specific omissions from the transcript of his previous criminal proceedings — and in some instances lack of a transcript all together — constitute violations of his right to procedural and substantive due process.

The Supreme Court has held that "the Due Process Clause is violated if an indigent defendant is denied a transcript." *Jackson v. Renico*, 179 F. App'x 249, 252 (6th Cir. 2006) (citing *Griffin v. Illinois*, 351 U.S. 12 (1956)). However, the Sixth Circuit has also held that missing portions of a transcript do not constitute a *per se* due process violation. Instead, a plaintiff must show prejudice resulting from the missing transcripts. *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986) ("Any time a page is missing from a transcript we cannot assume that reversible error may have been reflected on that page, but rather some modicum of evidence must support such a conclusion"). The Sixth Circuit has recognized "the difficulty in demonstrating prejudice where the transcripts are missing" but still requires a "petitioner [to] present something more than gross speculation that the transcripts were requisite to a fair appeal." *Ibid*.

Here, Rose's procedural due process claim cannot advance because, although he has pleaded specific omissions in the transcripts, the omissions relate to developments in his criminal case that occurred before his guilty plea and therefore, as previously discussed, are not subject to attack. Some of the omissions that the plaintiff identified include comments made on the record about the actions of law enforcement and his bond hearing. Moreover, the plaintiff was able to complete a full round of direct appeals and pursue a federal habeas petition. His filings here do not suggest a viable procedural due process claim.

Nor do the filings establish a substantive due process claim. "Substantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments." *MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 414 (E.D. Mich. 2019) (citing *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006)). There are other constitutional amendments that might come into play here, as discussed above. The plaintiff's

case, therefore, must stand or fall on his ability to pursue claims under those constitutional provisions.

<div align="center">C.</div>

The magistrate judge also recommended denying the plaintiff's several motions for a preliminary injunction as moot, and also because the plaintiff could not show irreparable harm. The plaintiff also lodged objections to that recommendation, contending that he was entitled to that relief on the strength of his pleaded claims.

Rule 65 of the Federal Rules of Civil Procedure authorizes the issuance of preliminary injunctions and temporary restraining orders. When considering whether to issue a preliminary injunction, the court weighs four factors: (1) whether the movant has demonstrated a substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without the injunction; (3) whether the preliminary injunction would cause substantial harm to others; and (4) the public interest, if any, that would be served if the injunction issues. *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Although these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Ibid.*; *see also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). An inadequate showing of irreparable harm also will preclude such relief. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (observing that "the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction") (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

For the reasons discussed above, the plaintiff has no likelihood of success on the merits. And because he has not lost irretrievably an opportunity to file post-conviction motions, he has not shown irreparable harm. *See Caspar v. Snyder*, 77 F. Supp. 3d 616, 640 (E.D. Mich. 2015)

(holding that "the hallmark of irreparable injury is unavailability of money damages to redress the injury").  Therefore, the Court will deny the motions for injunctions.

<div align="center">III.</div>

The magistrate judge properly considered the record and correctly applied the governing law in reaching her decision to recommend dismissal of the various iterations of the complaint and denial of the motions for preliminary injunction.

Accordingly, it is **ORDERED** that the plaintiff's objections to the report and recommendation (ECF No. 29, 31, 34) are **OVERRULED**, the report and recommendation (ECF No. 23) is **ADOPTED.**

It is further **ORDERED** that the plaintiff's motions to amend the complaint (ECF No. 7, 22, 26) are **GRANTED**.

It is further **ORDERED** that the motions for a preliminary injunction (ECF No. 2, 9, 21) are **DENIED**.

It is further **ORDERED** that the plaintiff's motion to strike (ECF No. 35) and motion to appoint counsel (ECF No. 39) are **DISMISSED** as moot.

It is further **ORDERED** that the complaints are **DISMISSED WITH PREJUDICE** against defendant Wayne County, only.

It is further **ORDERED** that the complaints against all other defendants are **DISMISSED WITHOUT PREJUDICE**.

<div style="margin-left:50%">
s/David M. Lawson

DAVID M. LAWSON

United States District Judge
</div>

Date:   September 25, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on September 25, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI